So this is a case of RE March versus the Board of Ed 1-19-2027 and consolidated with 1-19-2254. Before us you have Appellate Court Justices Cynthia Cobb, James Fitzgerald-Smith, and Terry Levin. The procedure is as follows. First the appellant will argue their case without any interruptions and we will respond with our questions. Then the appellee will make their presentation and we will respond with our questions as to that person and then the appellant will do his closing. And with that you may proceed. Thank you your honors. So as I mentioned I'm going to rely primarily on my brief. So obviously we're asking you three honors to affirm the trial court's ruling on the new trial for disfigurement damages. Point one is that in this type of situation the trial court's entitled to substantial deference. Obviously they presided over this case and heard all the evidence and were able to observe the witnesses. I'll just reread some of the case law. I cited a court- Wait a minute you're the appellee. Aren't we supposed to hear from the Board of Education? Oh I'm sorry I apologize. Let's hear from Mr. Doyle. Where we are going there. Yeah. Thank you your honors. Thank you your honors. May it please the court. My name is Thomas Doyle for the Board of Education of the City of Chicago. There are two post-trial motions that are up on this appeal. Okay. One relating to a new trial on damages on disfigurement and one relating to a J&OV ruling. Briefly the facts as they were occurred here. Ari Motch was a nine-year-old boy in 2016. He was playing at a CPS playground on a Saturday and he was there with his father and his brother. His father left for a short period of time. While Ari was running and playing tag with other boys he collided with a pole. The pole was part of what they called a talk tube. It was a piece playground equipment. And he suffered an injury to his face. He at trial Ari had sued the Board of Education and the manufacturer. He settled with the manufacturer. At trial Ari had argued or his counsel had argued that the board acted willfully and wantonly in failing to replace a cap that was willful and wanton. And here's why that was important. Under the relevant section of the Tort Immunity Act cited in our brief it's 3-106. The board is immune from a claim like this unless the injury is proximally caused by the board's willful and wanton conduct. So plaintiff's counsel was attempting to show that the board's willful and wanton conduct the failure to replace the cap from the pole had caused proximally caused Ari Manch's injury. At the conclusion of all of the evidence the jury issued their verdict. They awarded approximately $55,000 in medical bills, approximately $20,000 in future medical bills. They awarded zero for pain and suffering, zero for future pain and suffering, zero for loss of normal life, and zero for disfigurement. The jury also made a finding on contributory negligence finding that the plaintiff was 49% contributory negligent and that was factored into the final recovery for the plaintiff. There were two post-trial motions that were relevant here today. The plaintiff moved for a new trial on damages focusing on two elements of damages pain and suffering and disfigurement. The trial court denied the motion as to pain and suffering and granted the motion as to disfigurement only. So the new trial that would have occurred would have related only to the issue of disfigurement damages. Separately, the board had moved for a J&OV on several grounds. The one that is relevant here is the proximate cause issue. The trial court denied the board's J&OV motion. So we're here on granting the new trial on disfigurement. The trial court denying the J&OV motion. Let's turn first to that new trial order. There are sort of two paths of how the trial court's analysis gets to a new trial on damages. One path is an intention or an inconsistent verdict and the other path is the evidence. Let me talk about the evidence first. There's sort of two formulations of how the evidence works. Either manifest way to the evidence or ignore to prove an element of damages. They are essentially getting to the same question. Was there evidence to support the jury's finding on disfigurement of zero? It is an abuse of discretion for a trial court to grant a new trial on damages when there is evidence to support the jury's verdict. Here there was evidence to support the jury's verdict of zero. Here's what the evidence involved. First, the plaintiff stood in front of the jury at close range so the jury could look at his face and they could make their own first-hand assessment of what his face looked like and what disfigurement they saw and how they would measure it. Second, there was an absence of proof on one point in that there was no before photo put in the record. So the jury did not have a basis to compare the plaintiff's appearance before the incident with after the incident to assess the impact on his appearance. Finally, there was bits of pieces from the plaintiff in which he minimized the impact on his appearance. He described it as a quote little cut quote. He said that his nose droops down quote a little bit and he said that the incident made him feel or that the mark on his face made him feel kind of cool. The jury took all of that evidence, their first-hand inspection of the plaintiff, the lack of a before photo and the plaintiff's testimony itself and the jury came to the conclusion that on the jury form the question they were asked, disfigurement experienced as a result of the injuries that the correct number was zero. There was evidence to support that and it was error to set that aside on the basis of the evidence. That leaves us the other path potentially for how this verdict could be analyzed which is whether there is some inconsistency in the jury's verdict. Here there was no inconsistency. This court like the trial court, this court reviews an inconsistent verdict on a de novo basis and so like the trial court, this court is looking at whether there is any way to explain what it is that the jury did. There are ways to explain what the jury did here. Perhaps the jury was not persuaded that this was a significant disfigurement after they had already awarded $20,000 for any future surgery that he might need. Perhaps it is markedly in line with their pain and suffering ruling where they awarded zero. In other words, perhaps the jury was not persuaded that this was a serious injury or perhaps the jury had difficulty coming up with the causation piece of it. The disfigurement experienced as a result of the injuries as it was marked on the plaintiff on the jury form. In other words, there was no photo. All of those things are explanations that explain how the jury could have gotten to a zero legitimately on the disfigurement piece. If that's the case counsel, you're essentially arguing that the two surgeries that this young man had were, you know, elective surgeries. He had two surgeries on his nose, left him with an asymmetrical nose and he had a scar and the trial court was there to observe the testimony both of the doctor, but also to observe the young man. And I don't know if you, did you cite a case that says you have to show a pre-accident photo in a disfigurement case? I do not believe there was a case that says that. I don't think there's any requirement. Judge, but the question the jury has is how do they compare what's the disfigurement and how do they evaluate it? He did have surgery. You're correct. He had two surgeries and they gave him money for another surgery because the doctor wasn't sure whether or not that would be successful. They apparently wanted to give money for that, right? Correct. Dr. Shahzad's testimony on a possible third surgery is he said after the second surgery, he advised the family, wait and see what happens with Ari's appearance. And if another surgery is necessary, come back and see me. The jury gave $20,000. Dr. Shahzad also testified the family never went back to see Dr. Shahzad about a follow-up surgery. In other words, Judge, the jury did award money for those surgeries, but the jury concluded there was not disfigurement. They can do that. How is that possible? And how is it not inconsistent when you have a medical doctor saying that the young man is still left with an asymmetrical nose, still after two surgeries, and has a visible scar on his face? How is that consistent with giving money for finding in favor of the plaintiff against the board and giving money for future surgeries? Forget about the pain and suffering. How's that, you know? What the doctor testified to, Judge, is the doctor said that after the second surgery, he regarded it as a success and that there was still some asymmetry. That's what the doctor said. And what is asymmetry? Disfigurement? But Judge, the doctor said the asymmetry may take care of itself and come back and see me if it does not. Okay, and where's the compensation for the time before while it's still asymmetrical? When this case was tried in front of this jury, this child was, post two operations, had a still asymmetrical nose, despite the efforts of the doctor, and had a scar on his face, and they gave nothing for disfigurement. Judge, it was their job to decide how bad the disfigurement was and what dollar figure they would put on it. And they had a basis for what it is that they did. It may be the trial doesn't agree with it. Is that what the Board of Education argued, that there was no disfigurement? Look at him, he's fine. Did you argue that to the jury? We argued you can make your own evaluation of the disfigurement, yes. My question is, did you argue that he is not disfigured, that he didn't have a scar, that, you know, there's no evidence as to what he looked like before? What was the of the Board of Education at trial? At trial, we did say that there is no evidence of what he looked like before for you to compare that, Judge. We said that in our closing argument, and that there is no way for you to assess the extent of any disfigurement that you see. We also said, Judge, that you have seen the plaintiff yourself, that you have looked at him, and you can decide the amount, and we asked for zero. Yeah, but when you talk about the extent of the disfigurement, I mean, there's no question that there was disfigurement in this case. How can this young man hit that metal pole, have the fracture to his nose and the resulting two surgeries, medical opinion of a doctor that it's still asymmetrical, a scar in his face, and how can you look in the eye via Zoom and say that there's no disfigurement, zero dollars for disfigurement? What I can say, Judge, is it was the jury's job to decide the value of the disfigurement, and they did that. So they gave him, it's consistent though, because they gave him money for surgery in the future to maybe fix this problem that didn't exist. They did give him $20,000 for future, and maybe the jury decided that was enough, Judge. Well, it's an itemized verdict. They put zero next to something that there should have been a number. No, they put zero next to something that they decided there should not be a number. That was their decision, Your Honor. And the verdict form says disfigurement experienced as a result of the injuries. But even the child in its testimony standing right in front of the jury talks about that being a scar, and I can well imagine that this child who suffers this injury, hearing from his parents, oh, don't, you know, even though you're being teased, it's not that bad, and the kid is being helped to feel okay about the scar. But the kid is standing right before the jury. There's a verdict. There's a dollar figure assessed for an additional surgery. What's the surgery for? The surgery is if there was any need to correct anything else, if there was any disfigurement. A surgery for what? It would be a surgery to correct the asymmetry that the first two surgeries didn't work on, right? It would be a surgery for whatever else would have been medically necessary. He went into the hospital because of injuries that happened on the playground, right? He did go into the hospital because of injuries that happened on playground. That's right. And he went to this plastic surgeon to get surgery on his nose because of the injuries that suffered on the playground, right? He had two surgeries that way. You're right, Judge. And the doctor testified that both surgeries were successful, and that sometimes this asymmetry resolves itself and come back and see me in a year. Maybe the plaintiff should have sued the doctor for malpractice for trying to cure something that wasn't a problem. Maybe so, Judge. Yeah, yeah. Let's go back. Hang on, guys. Let's go back. You also raise a JLB approximate cause argument. That's right, Judge. Would you give me a little more on that? Because I'm having my doubts on that. You know, when the gentleman who was supposed to repair those things indicates, well, they just didn't get around to it, and they didn't have money in the budget at that time, that kind of leaves me kind of hanging that they should be able to do something. You know, they should have at least removed or covered it. Here's the approximate cause issue, though, Judge. There is no testimony that he hit the part of the pole that is identified as dangerous. The plaintiff testifies, I ran into the pole, period, full stop. He doesn't say more than that. The plaintiff looks at the photographs and marks the photographs that show the pole and is never asked and never testifies what part of the pole did he hit. Beyond that, the doctor testified that the plaintiff's injuries were consistent with running into a pole. Your Honor, there is no proof that he hit the part of the pole that is the focus of the willful and wanton charge. So, for example, if we had done one of the things that he had suggested, that the plaintiff's counsel suggested at trial, if we had put the plastic cap on that pole and already ran into it, all of the evidence that was admitted at trial suggests he would have still suffered an injury. No disfigurement, though, right? Well, no disfigurement. The jury found no disfigurement, Judge. That's right. Well, but he has a laceration, not some blunt trauma. It's a cut. If you run smack into a solid, flat object, you're going to get a bruise and maybe you'd break your nose. But we've got a laceration, which I think, I'm no doctor, but I think a laceration is different from maybe fracturing, where you don't break, you may not break the skin. But we understand from the record that there is a laceration which protrudes to the child's cheek. Is it consistent with simply running into a pole that you would be, that you would have a laceration? There is not evidence in the record on that point, Judge. I understand exactly what you're saying. And laceration appears in the record. That's exactly how it's described. You're right. And I have seen things, you know, if we're talking about our personal experiences, I have seen my own kids run into things and split their face, split a lip on a blunt object. Your Honor, there is not evidence that says that the laceration happened because he hit the part of the pole that was missing the cap. There's just no evidence on that. And there is no evidence that says that a laceration could or could not happen because of running into a blunt pole. Proximate cause. Proximate cause, however, is a question of fact for the jury, right? It is. I know it's the basis of your JNOV here. I understand the legal principles that you're trying to rely upon. What is the standard of review that we have to review the judge's decision to deny your JNOV on causation? It's abuse of discretion, Judge. And here's the thing. It is an abuse of discretion when there is no evidence on a point. And the law in the state says when proximate cause is only by surmise or conjecture that there is a failure of proof. Okay. I don't recall from the record right now, but was there a motion for directed verdict on the lack of causation made before the case went to the jury? I need to look at the record also, Judge. Yeah. We'll check that out and make sure it's reflected in whatever we come out with. Thank you. That's all I have. Your Honor, I have one more question. The superintendent or the maintenance person who actually saw this poll, there had been a prior injury. Is that correct? Is that in the record? There had been a prior injury by a child on this same instrument and that did not put the board on notice that we've got a problem here with this poll? Even assuming that, you know, no laceration. There was another injury. The evidence on that does not, on that one does not say what part of the poll that child hit. But just even assuming that the poll was there and another child is injured, doesn't that kind of cut against your argument that no wolf and wanton misconduct? I understand the tort immunity access, no liability for playgrounds, but I think the presumption is, is the playground is maintained in a safe condition, not just any old playground. There was another injury here, which put the board on notice and yet they did nothing because the replacement of this $40 cap would somehow negatively impact the budget. We have not appealed that piece of wanton and willful conduct, Judge. Our appeal on the JNOV is solely on the proximate cause. We raised that issue that you're talking about at the trial court and we argued this. There is not sufficient proof that the board acted willfully and wantonly. We have not raised that on appeal. So what you're arguing really on causation is that there was no direct evidence presented by the plaintiff that the defect in question was the proximate cause of the injury to the child. Yes. Okay. But you would, you would acknowledge, wouldn't you, that circumstantial evidence can be sufficient when causation is shown by facts and circumstances that in the light of ordinary experience, reasonably suggest that the defendant's conduct operated to produce the injury. So it could be come in via circumstantial evidence as well, right? It can. And the question is, and it's a question for this court to figure out is, is it circumstantial evidence or is it surmise and conjecture? Exactly. Okay. Fairly stated. Thank you. Yes. Anything further from, no. All right. Mr. O'Connor, you can attempt to respond. Thank you, your honors. Yes. Judge Lavin just made my first point was that it's not our burden to prove proximate cause by direct evidence. The case was replete with allowing plaintiff to prove proximate cause by circumstantial evidence. Here, we know that at the time this boy was hurt, there, the metal tube was uncapped. So it's uncontroverted. The injury was caused by uncapped metal tube. Now they're certainly allowed to argue that the trauma was caused from him running into the tube as opposed to the face striking the cap, but that's for the jury to decide. And as mentioned by one of the justices, there is evidence in the record of a laceration, which is consistent of a facial injury from the uncapped portion of the tube. So yes, they have sufficient evidence in the record to argue it was caused by a direct blow from the tube itself, but there's sufficient evidence in the record for the jury to conclude otherwise, which they did, that this injury was caused by a facial contact with the uncapped portion of this tube. So that's all I have on the J&OV portion, your honor. I think, Mr. Doyle, the extent of your J&V is just based on the proximate cause. Is that true? Mr. Doyle, did you hear? Yeah, I did. J&OV is only on proximate cause, on appeal. That's correct. So I'm going to redact a couple other points I had. Then just one point briefly, if I may, on the disfigurement judges is, again, the jury awarded damages for this future revision surgery. And this future surgery would be solely, the only purpose would be to correct a asymmetry. This is not a case where they're doing some procedure to correct a breathing difficulty or some pulmonary issue. The only purpose of this future procedure would be to correct an asymmetry, which that in itself is a disfigurement. That's the only purpose for this future surgery. So it's irreconcilable for a jury to award damages for a future cosmetic surgery done strictly to correct a disfigurement. That's the only purpose of the surgery. And in my opinion, and I think the case law supports it, it was irreconcilable for them not to award some damages for disfigurement. And it was appropriate for the trial judge to order a new trial for damages on that limited issue of disfigurement. Thank you. Any questions? No The reasons we've talked about today, we ask that you reverse both of the post-trial rulings. Thank you, judges. Thank you very much. I apologize again for the delay, your honor. Yeah. All right. Thank you for your time and your efforts. And we'll let you know as soon as the three of us get together. Thank you. Thank you to both counsel.